## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MOTHER SMITH, on behalf of herself and as
Parent and Natural Guardian, on behalf of
ABRAHAM SMITH, a Minor,

        Plaintiffs,

    vs.

MILTON HERSHEY SCHOOL,

        Defendant.

Case No.: 11-7391 (CDJ)

## ANSWER WITH AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT
## AND COUNTER-CLAIM FOR DECLARATORY JUDGMENT

Milton Hershey School ("the School" or "Defendant"), by counsel, files this

Answer with Affirmative Defenses and Counterclaim to the Amended Complaint,

averring in support thereof as follows:

### INTRODUCTION

### AND DEFENDANT'S BACKGROUND STATEMENT

A.     Under Title III of the Americans with Disabilities Act, no entity is required

to allow any individual to participate in its programs or services "where such individual

poses a 'direct threat' to the health or safety of others." 42 U.S.C. §12182(3).  The School

considered all of the factors required by law and reached the conclusion that the risk

posed by Abraham Smith being HIV-positive rises to the level of a "direct threat" to the

health and safety of others.  The School's primary concern was the risk of transmission

through unprotected consensual sex with other students, which the School concluded could not be reduced below the level of a direct threat. The School also concluded that significant alterations to its programs and services would be needed to reduce the identified risks within its unique residential environment. This was not an easy decision. The School balanced the civil rights of this child against its obligation to protect the health and safety of other students, and believes its decision to discontinue processing Abraham Smith's application for admission was proper. While the legal standards at issue here are well-settled, they have never been applied to facts like those present here.

B.      Despite Plaintiffs' allegations and their press release, this case does not involve whether an HIV-positive student poses a risk if he plays sports, drinks from water fountains or attends classes. The School recognizes that people with HIV or AIDS have suffered discrimination arising from ignorance, fear, stereotypes or intentional discrimination. While a number of such cases have involved access to public schools, day care, school athletics, or short-term summer camps, this case does not. This is a complex case that requires a full understanding of the nature, culture and environment of the School and its student body. It also requires a realistic examination of teen sexuality, and an express recognition of the inability to control *consensual* sexual activity between teenagers in the unique residential setting of the School.

C.      The Milton Hershey School educates children in a unique, home-like environment. While admission to the School is no longer limited to orphans, the School is designed and operated to raise and care for children, and to fulfill a parental role for most of the year. All students live on campus in homes with 10 to 12 other students, 24

-2-

hours a day, 7 days a week, throughout most of the year. Because of the comprehensive nature of the care provided by the School, and its lengthy history and extensive experience serving children, the School is very aware that no child consistently makes responsible decisions which consider and protect the well-being of others.

D.     The School attempted to discuss with the Plaintiffs the issues that arise from this unique setting and the School's assessment of the risks, and invited the Plaintiffs to identify any legal authority, or personal factors involving Abraham Smith, that might affect the School's determination of whether his enrollment would pose a "direct threat" to others. Plaintiffs dismissed the School's concerns and the opportunity offered to address them, choosing instead to file suit on the eve of World AIDS Day.

E.     The School believes that it has correctly applied the law to the facts. The School also recognizes that this case presents a novel issue of law. There are no reported decisions regarding the direct threat standard in the context of consensual sexual activity among minors, and other attendant risks, in this type of home-like setting.

F.     At the time it received notice that this lawsuit had been filed (via multiple media outlets), the School was preparing to file a Declaratory Judgment action, the purpose of which was to present the determinative issues in an objective way. That approach is now stated as a counterclaim asking the Court to determine the rights and obligations of the parties on certain threshold legal issues.

1003263.10 02/03/2012

## ANSWER TO THE AMENDED COMPLAINT

**Answer to Plaintiffs' Introduction and Background Statement**

1.       Admitted in part, denied in part.  The School admits that Plaintiffs have filed this lawsuit against the School for alleged violations of the ADA and state law. The School denies that it has violated the rights of the Plaintiffs or that they are entitled to any relief.  Defendant admits that on December 2, 2011, it received notice that a Charge of Discrimination had been docketed with the Pennsylvania Human Relations Commission.  Defendant further states that because any such Charge must be pending for a year before Plaintiffs can bring a private right of action, any effort to amend the Complaint after those remedies are exhausted will be untimely.  All other averments are denied.

2.       Admitted on information and belief as to Abraham Smith being infected with the human immunodeficiency virus ("HIV").  The remaining averments are denied, and it is specifically denied that the School "refus[ed] to consider Abraham for enrollment...."  Abraham was considered, and his application was discontinued for legally acceptable reasons.

### Jurisdiction and Venue

3.       Admitted.

4.       Admitted in part, denied in part.  The concept of supplemental jurisdiction is properly described, but it is denied that there is any basis for it in this case.

-4-

5.      Admitted that 42 U.S.C. §12188(a) provides a private right of action. Denied that a valid private right of action exists, or has been plead, in the Amended Complaint.

6.      Admitted in part, denied in part.  It is admitted that venue is proper in this district.  It is denied, however, that this is the best and most convenient forum for adjudication of this case.  The most appropriate venue for this action is in the Middle District of Pennsylvania, where all of the events giving rise to the claims occurred, where the School is located, and where the majority of witnesses are located.

7.      Denied.

8.      Denied.  Defendant expressly denies that any of its alleged actions or omissions took place in this judicial district.

9.      Admitted in part, denied in part.  By way of further answer, the School is located in Hershey, Dauphin County, Pennsylvania.  It operates pursuant to the terms of a Deed of Trust established by Milton and Catherine Hershey, and that Deed of Trust governs its programs and services.  Under the terms of the Deed of Trust there is a priority given first to students who reside in the three counties surrounding the School (Dauphin, Lancaster and Lebanon counties), then to students who reside in the Commonwealth of Pennsylvania, then to students who reside in other states.  Nothing about the priority stated in the Deed of Trust bears on whether venue is convenient in this case in this judicial district.

10.      Admitted in part, denied in part.  See Response to paragraph 9.

-5-

11.     Admitted in part, denied in part.  See Response to paragraph 9.

12.     Admitted.

13.     Admitted.

## Parties

14.     Admitted.  By way of further answer, Defendant avers that one of its concerns was with its ability to maintain the confidentiality of Abraham Smith were he to be enrolled.  While Defendant is concerned that the Plaintiffs' publicity of this case may have made that impossible, the School supports whatever steps may be appropriate to try to keep the identity of the Plaintiffs confidential.

15.     Admitted on information and belief.

16.     Admitted.  By way of further Answer, see response to paragraph 9.

17.     Admitted, except that students do not live with "their own age group." Homes are grouped by Division—Elementary (pre-K through grade 4); Middle (grades 5-8); and Senior (grades 9-11, with 12th graders living in a different apartment setting). Therefore, it is likely that students of different ages may live together.  Moreover, the School operates a home-like residential setting in conjunction with its educational program that is a fundamental part of its program.  Students reside at the school 24 hours a day, 7 days a week, for most of the year, living in family-style residences.  The Houseparents' dependent children also frequently reside in the same home as the Milton Hershey School students.

18.    Admitted.  By way of further answer, students often also reside at the School for most of the year, not just during the school year.

19.    Admitted that the quote is accurate, but denied that the quote captures a complete description of the policies, procedures and practices regarding the School's academic programs and services.

20.    Admitted as stated, denied as to completeness.

21.    Admitted as stated, denied as to completeness.

22.    Denied as a conclusion of law not requiring response.  In addition, to the extent this averment is deemed factual regarding agency, employment and scope, those facts are denied and proof is demanded.

### Facts

23.    Admitted on information and belief.

24.    The School is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 24 of the Complaint, and therefore denies them.

25.    Admitted on information and belief that Abraham Smith is HIV positive; otherwise denied.

26.    Admitted that admission was sought, denied as to when the decision was made, as the School has no basis on which to respond.  By way of further answer, the School further states that this was not the first time that Plaintiffs had applied for admission to the School as Abraham Smith previously applied in February 2009.  That

-7-

prior application contained no indication of any medical condition. Shortly after receiving that application, the School notified Plaintiffs that there were insufficient spaces in the applicable grade to consider Abraham Smith for admission at that time.

27.    Admitted that the contact was made; why it was made is not directly known by the School.

28.    Admitted that such a contact was made, denied as to content.

29.    Admitted that such a contact was made. By way of further answer, the Admission staff responded to the effect that all medical issues affecting admission were evaluated individually. The remaining averments are denied.

30.    Admitted that some medical records were received; otherwise denied.

31.    Admitted that an application was received at or about that time; otherwise denied.

32.    Admitted that some records were received; otherwise denied.

33.    Admitted that the quote is accurate, denied that the list of criteria is complete. By way of further answer, the fact that a student satisfies all minimum eligibility requirements does not mean the student will be enrolled. The School often receives more applications than the spaces available, and regularly concludes that applicants are beyond the capabilities of the program.

34.    Denied.

35.    Admitted only that the partial quote is accurate; otherwise denied.

1003263.10 02/03/2012

36.   Denied. By way of further answer and denial, the reason the School discontinued processing Abraham Smith's application was related to his HIV-positive status. The primary reason was the risk he would pose to others in this residential setting. In addition, the School determined that in order to mitigate the risk to others and to accommodate his needs, the School would have to make modifications of its policies and procedures that would not be reasonable, would pose an undue burden, and/or would fundamentally alter the nature of the School's programs and services.

37.   Denied. These averments paraphrase scientific and medical conclusions and analysis, and a publication of the CDC which speaks for itself.

38.   Admitted that the quote is accurate; otherwise denied.

39.   Denied.

40.   Denied.

41.   Denied.

42.   Denied.

43.   Denied.

44.   Admitted.

45.   Admitted in part; denied in part. Admitted that the School did not evaluate information about Plaintiffs beyond the records received; otherwise denied.

46.   Admitted that such a letter exists, was sent, and was received; otherwise denied as a writing which speaks for itself. The School notes that at no point in that letter

did counsel address the issues arising from teenage sexual activity, or cite any authority concerning the risks of HIV transmission arising from sexual activity.

47.    Denied.

48.    Admitted that the partial quote is an accurate portion of a statement released by the School in response to press inquiries triggered by Plaintiffs' press release and subsequent press appearances; otherwise denied.

49.    Admitted that such a letter exists and was sent; otherwise denied as a writing which speaks for itself.

50.    Admitted that the letter exists; otherwise denied as a writing which speaks for itself.

51.    Admitted that the letter exists; otherwise denied as a writing which speaks for itself.

52.    Admitted that the letter exists; otherwise denied as a writing which speaks for itself.

53.    Admitted that the letter exists; otherwise denied as a writing which speaks for itself.

54.    Admitted that the letter exists; otherwise denied as a writing which speaks for itself.

55.    Admitted that the letter exists; otherwise denied as a writing which speaks for itself.

56.    Denied.

57.    Denied.

58.    Denied. The School's assessment and conclusions were not based solely on

HIV status without consideration of all of the relevant legal considerations and factors,

the standard for determining a direct threat, and the legal limits on what accommodations

or modifications of policies and procedures are required under the ADA.

59.    Denied. The School did not make an independent assessment of whether

Abraham Smith would be admitted to its "residential program." Residential life is an

integral part of the School's total program, and this was a single decision on admission.

The response by way of denial to paragraph 39 is incorporated here by reference.

60.    Denied.

61.    Denied.

### First Claim for Relief for Violation of the ADA

62.    The answers and denials of paragraphs 1-61 above are incorporated here,

and the School further denies any allegations incorporated in paragraph 62 of the

Complaint not expressly admitted above.

63.    Denied. The law says what it says, and the courts establish what the law

means.

64.    The allegations in paragraph 64 contain a conclusion of law on which the

Plaintiffs have the burden of proof and to which no response is required. To the extent

that a response is required, the School acknowledges that the ADA has recently been

amended, that the EEOC in implementing regulations under ADA Title I has stated that

-11-

asymptomatic HIV would generally be considered a disability, but notes that the

Department of Justice has not provided its own guidance on the effect of those

amendments under ADA Title III.

65.    Denied.

66.    Admitted in part.  The School admits only that it operates as an elementary

and secondary school, and that it is privately owned and operated; otherwise this

averment is denied.

67.    Denied.

68.    Denied.

69.    Denied.

70.    Denied.

**Second Claim for Relief**

**Intentional Infliction of Emotional Distress**

71.    The School restates and incorporates by reference the allegations in

paragraphs 1-70 above, and denies any allegations incorporated in paragraph 71 of the

Complaint not expressly admitted above.

72.    Denied.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

WHEREFORE, Defendant prays that the Amended Complaint be dismissed in its entirety.

## GENERAL AND AFFIRMATIVE DEFENSES

77.    Plaintiffs fail to state a claim upon which relief can be granted.

78.    The allegations of the Amended Complaint, and each purported cause of action contained therein, are not pled with sufficient particularity and are uncertain, vague, and ambiguous.

79.    Plaintiffs' claims may be barred, in whole, or in part, by the doctrines of unclean hands, estoppel, acquiescence, and/or laches.

80.    The Complaint is barred, in whole or in part, because any actions taken with respect to Plaintiffs were based on honest, reasonable, and good faith belief in the facts as known and understood at the time.

81.    The Complaint is barred, in whole or in part, because the School is a private club or establishment exempted from coverage under Title III of the Americans with Disabilities Act of 1990 ("ADA").

82.    The School has had in place at all times a plan for compliance with the ADA; its plan is being continuously implemented; and the School is in compliance with the ADA.

83.    The ADA allows the School to discontinue processing the application of Abraham Smith, and to not enroll him, because he posed, and continues to pose, a direct threat to the health and safety of others in the School's unique residential setting that

cannot be reduced though reasonable modifications to the School's policies, procedures and practices. The School's decision was based upon an individualized assessment, an understanding of the medical risks of transmission of HIV, the unique residential setting of the School, its knowledge of the high percentage of sexually-active students, and other factors that are not present in public schools, day camps, or short-term summer camps.

84. The requested injunctive relief (to admit Abraham Smith and enroll him in the School) is not appropriate if, based upon objective medical evidence and an independent assessment, the Court determines that Abraham Smith would pose a direct threat to the health and safety of others if enrolled.

85. The requested injunctive relief of admission is not appropriate because Plaintiffs never completed the application process, so there was never an assessment, following interviews and other required testing, that Abraham Smith was otherwise qualified for admission. Admission would therefore alter the status quo and deny the School the opportunity to complete its review of Smith's application for enrollment.

86. The ADA does not provide for compensatory, actual or punitive damages as a remedy under Title III for individual claimants.

87. The School was within its rights under the ADA to discontinue processing Abraham Smith's application because the accommodations needed in order to attempt to reduce the risk of injury to others in the residential setting, and to provide him other services, would not be reasonable modifications of its policies and procedures, and/or would impose an undue burden, and/or would require a fundamental alteration of its programs or services.

-14-

88.    The School was within its rights under the ADA to discontinue processing Abraham Smith's application because it would have been unable to satisfy its obligation under the ADA, and the expectation of the Plaintiffs, to maintain the confidentiality of his medical condition in this residential setting.

89.    The School's actions were not "extreme or outrageous" and, therefore, Plaintiffs fail to state a claim for intentional infliction of emotional distress.

90.    Plaintiffs' alleged "embarrassment" and "humiliation" resulting from the School's actions was not severe enough to support a claim for the intentional infliction of emotional distress.

91.    Plaintiffs' alleged "embarrassment" and "humiliation" may have been contributed to by the media-related and other recent actions undertaken by Plaintiffs and their counsel.

92.    No injury to Plaintiffs was proximately caused by any action or inaction attributable to the School.

93.    Plaintiffs' claims are barred, in whole or in part, by their failure to mitigate their damages.

94.    Plaintiffs' demand for injunctive relief fails to provide requisite detail, state its terms specifically, or describe in reasonable detail the act or acts to be restrained or required.

95.    Plaintiffs' demand for injunctive relief (to admit Abraham Smith and enroll him at the School) is inappropriate because media-related and other recent actions *by the*

*Plaintiffs and their counsel* will make it difficult, if not impossible, for the School to keep Abraham Smith's identity confidential if enrolled.

96.    Plaintiffs' demand for compensatory and other damages fails to provide requisite detail concerning actual and other damages incurred.

97.    The School intends to rely on or assert such other defenses which may become available or apparent during the course of discovery in this case. The School expressly reserves the right to amend this Answer to assert any and all such defenses.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

### Declaratory Judgment that Milton Hershey School Has Not Violated
### ADA Title III by Discontinuing its Consideration of Defendant Abraham Smith For
### Possible Enrollment [Because He Would Pose a Direct Threat to the Health and
### Safety of Others]

98.    The School incorporates by reference the preceding paragraphs 1 through 97 as if fully restated.

### Jurisdiction

99.    This Court has subject matter jurisdiction over this declaratory judgment action under the Declaratory Judgment Act, 28 U.S.C. §2201 ("DJA") and ADA Title III.

100.    An "actual controversy" exists regarding whether the School has an obligation under federal law to admit Abraham Smith into its unique residential and school program.

-16-

101.   The School asserts a legal relation, status, right, or privilege that is denied by Counterclaim Defendants - namely, that if Abraham Smith is an otherwise qualified individual with a disability who is eligible for admission to the School, the School is not obligated to continue to process his application for enrollment and admission if it determines that he poses a "direct threat" to the health or safety of others that cannot be mitigated through reasonable modifications of policies, practices or procedures, or the provisions of auxiliary aids or services. *See* 28 C.F.R. §36.208. The School has made an individualized assessment as required by the ADA and its implementing regulations, and determined that Abraham Smith would pose such a direct threat, and it discontinued the processing of his application as a result.

102.   Where federal jurisdiction would exist in a coercive action, the Court has subject matter jurisdiction to hear a claim for declaratory judgment by the entity threatened with suit.

### Additional Facts

103.   The School was created pursuant to a Deed of Trust established by Milton and Catherine Hershey for the purpose of educating children from families of low income, limited resources and social need.  In accordance with its governing Trust documents, the School provides a unique all-encompassing program for these children, including an education, housing in a family setting, food, clothing, medical, dental and psychological care, and recreational opportunities, with no financial obligation to the family.  The School currently serves more than 1,800 students, with approximately 600 in the Middle Division (grades 5-8) and 900 in the Senior Division (grades 9-12).

-17-

104.   Once admitted, students generally enroll through high school graduation, provided that the child complies with all applicable policies and procedures.  The School offers small class sizes and individualized attention in a highly structured environment.  There are high expectations for performance and behavior, and significant supervision.  Students and their parents must agree to abide by all rules, policies and procedures as a condition of admission and continued enrollment.

105.   The School is familiar with the requirements of ADA Title III and has been able to accommodate the needs of many students with a wide range of disabilities.  Many students require psychological treatment and counseling, and some have learning disabilities.  The School has also enrolled students who had at the time of enrollment, or later developed, a wide range of physical or medical conditions.  The School estimates that at least 50% of its current students, and possibly more, have physical or mental impairments that would meet the definition of a "disability" under the ADA Amendments Act.

106.   Because of the nature of the School's programs and services, there are limits on the School's ability to accommodate all prospective or current students with disabilities.  In accordance with its Deed of Trust, the School admits students who have the capacity to learn and become above-average achievers; the School's program, however, is not designed specifically to provide intensive special education services.  Similarly, the School's program is not designed for students with severe behavioral problems that would interfere with the classroom and home life.  Because of the nature of the home-like residential program, with 10 to 12 students in each home, the School is

-18-

unable to accommodate students with active communicable diseases for more than a short duration.

107.    The application process contains a number of steps.  The initial stage includes submitting an application containing financial disclosures and obtaining school records and recommendations.  During this process there is an initial review to see if the student meets the financial criteria and has the academic potential to learn.  At this stage, or later in the process after the campus interviews, there may be medical, psychological, behavioral or academic issues identified that require further review, and can result in discontinuance of processing a particular application.  These decisions are based upon objective reviews by the relevant professionals, based upon the limits of the School's programming and compliance with the ADA and other applicable laws.

108.    Abraham Smith first applied for admission in February 2009.  His application was discontinued because there were limited spaces in his grade at that time. Abraham Smith's initial application did not disclose any medical issues.

109.    Abraham Smith applied for admission to the School a second time in March 2011.  Based upon the information provided during the application process, the Admissions Department made a preliminary determination that Abraham Smith appeared to meet the initial minimal qualifications for admission to the School.

110.    During the application process, the School was provided medical records that revealed Abraham Smith to be HIV-positive.  In accordance with its usual procedures, this information was reviewed by the lead physician for an ADA Medical Accommodations Review, followed by further review by a group of senior

-19-

administrators.  As a result of those reviews, the School decided to discontinue processing his application as beyond the School's programming.  As a result, Abraham Smith never completed the rest of the admissions process.  The steps that were not completed included, but are not limited to, an on-campus interview, various cognitive and behavioral tests, review of additional information on the child's behavior, a medical examination, and determination of whether there are available spaces.

111.   The primary reason the School initially discontinued processing Abraham Smith's application was the risk he would pose to others in this residential setting.  In addition, the School determined that in order to mitigate the risk to others and to accommodate his needs, the School would have to make modifications of its policies and procedures that would not be reasonable, would pose an undue burden, and/or would fundamentally alter the nature of the School's programs and services.

112.   In a letter dated August 5, 2011, counsel for Abraham Smith asked the School to reconsider its admission decision.  In response to this request, the School undertook another review of its decision.  At the conclusion of that review, the School again concluded that Abraham Smith would pose a direct threat to the health and safety of others, and that accommodating his needs would require a fundamental alteration of its programs and services, or an undue burden.

113.   One category of risks that would be posed by Abraham Smith if he was admitted to the School is the risk to others from exposure to blood that is likely to occur in various settings, including a residential setting.  The School acknowledges that the risk of transmission of HIV through this means is low, and can be minimized through the use

-20-

of "Universal Precautions." The School has concluded that because of the unique 24/7

residential nature of its program and services, with multiple caregivers throughout

enrollment, that a large number of staff had a need to know of Abraham Smith's status in

order to reduce the risk of injury from blood below that of a direct threat. The School

also concluded that fellow students in the home had a need and possible right to know of

his condition, and that parents and guardians of those students may have a need or right

to know. On information and belief, Abraham Smith and Mother Smith are not willing to

consent to the School disclosing Abraham Smith's HIV status to all those with a need to

know.

114. In addition, the School may need to make other modifications of its

programs and services to address the risk to students and others, such as training to

students within the student home to not provide first aid for each other in emergencies

without following Universal Precautions, which might require a fundamental alteration of

its programs. Abraham Smith's particular medical needs may also require significant

modifications of the School's services.

115. The other, more significant category of risks identified by the School is the

risk of transmission of HIV to fellow students through sexual contact. HIV has been

proven to be transmitted through sexual intercourse (homosexual or heterosexual). HIV

is permanent because there is no cure. The harm to third parties is life threatening. Thus,

in cases involving HIV, where there is a clear means of transmission such as sexual

conduct, the only issue to be raised is the likelihood or probability of sexual conduct.

116.   When analyzing the direct threat issues involving communicable diseases, courts typically focus on the medical risks of transmission in a particular setting, not based upon the individual.  For example, when addressing the risks of HIV-positive surgeons, courts consider the risks of an accident while doing surgery, not the skill or injury record of the particular surgeon.  Similarly, federal courts in such disparate settings as doctors' offices, Karate Schools, and prisons, have focused on the risks attendant to that setting, not the individual, including the risks of sexual activity.

117.   It is an unfortunate fact that throughout our society teenagers are increasingly sexually active at an ever earlier age, including Middle School.  Even with pervasive media attention to the problem of teen sexual behavior,  and with mandatory sex education, many teenagers are likely to engage in sexual behavior prior to high school graduation, often without the use of condoms.

118.   Students at the School are subject to rules about dating and sexual behavior. The School encourages sexual abstinence, and provides its students with comprehensive sex education and sound moral training.  Appropriate counseling and health services are provided for prevention, as well as when students are found to have engaged in sexual activity.  Violation of these rules can lead to discipline, up to and including expulsion.

119.   Despite the School's policies and procedures against sexual behavior on campus, and its efforts at supervision, the School knows through anecdotal evidence, student surveys, medical care and testing, discipline and other sources that a significant percentage of its students will, like their peers, become sexually active prior to graduation.  The School is also aware of occasional same-sex sexual experimentation

-22-

within homes, and rare cases of non-consensual sex. Because of the School's unique residential co-ed setting, a very closely-knit community, and the extended year, when students do engage in sexual activity, it is likely to occur on campus or while students are under the supervision of the School. These facts were known by the professionals and staff who were involved in the discussions about Abraham Smith's application.

120. The School is sympathetic to Abraham Smith's medical condition, but must balance his rights against its obligations to the health and safety of other students. Based upon its experience, and considering all of the relevant factors required by law, the School believes that the risk of transmission of HIV to other students through sexual conduct meets the standard of a direct threat to the health and safety of others that cannot be mitigated through reasonable modifications to its policies, procedures and practices. However, the School acknowledges that this is an evolving area of the law. This case poses questions that were left unanswered by case law. It also requires application of legal standards to a unique residential private school setting. Therefore, the School is seeking a declaration of its rights and obligations under federal law.

121. While the School's primary concern is based upon the direct threat to the safety of other students through the transmission of HIV by sexual conduct, if such transmission were to occur there is a not insubstantial risk of liability in a subsequent tort claim by an infected student. At a minimum, the School would face the likelihood of litigation.

**Basis for Relief**

122.   The DJA permits a federal court to "declare the rights and other legal relations of any interested party seeking such declaration," when there is a "case or controversy." 28 U.S.C. § 2201.  As the Court of Appeals for the Third Circuit ("Third Circuit") has explained, "a 'case of actual controversy' means one of a justiciable nature." *Abraham v. Del. Dept. of Corr.*, 331 F. App'x 929, 931 (3d Cir. 2009) (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 325 (1936)).  The controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).

123.   In *Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006), the Third Circuit identified three factors for determining whether a declaratory judgment is appropriate: "(1) the parties must have adverse legal interests; (2) the facts must be sufficiently concrete to allow for a conclusive legal judgment, and (3) the judgment must be useful to the parties." (citing *Step-Saver Data Sys., Inc. Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)). In this case, all three elements are met.

124.   The parties clearly have adverse legal interests.  The School believes that it was justified in discontinuing consideration of Abraham Smith's application based upon the risk to the health and safety of its students and others, and the inability of the School to meet Abraham Smith's needs in its setting without posing a direct threat to others, imposing an undue burden or a fundamental alteration of its programs and services. Abraham Smith and Mother Smith have rejected the School's articulated defenses and believe he should have been fully considered and admitted to the School.

-24-

125.   Second, the "facts are sufficiently concrete to allow for a conclusive legal judgment." In this case, most of the facts are not in dispute, and the development of the record would be no more than in a coercive action brought against the School. The real issues are legal in nature: whether the School violated the ADA by discontinuing the processing of Abraham Smith's application.

126.   Third, a declaratory judgment will materially affect the actions of the parties, i.e. whether the School has a legal obligation to continue processing his application without consideration of Abraham Smith's HIV positive status.

127.   For the reasons set forth above, the School asks that the Court declare that it does not violate ADA Title III to discontinue processing Abraham Smith's application because (a) he would pose a direct threat to the health and safety of others, and (b) his needs cannot be accommodated without imposing an undue burden or requiring a fundamental alteration of the programs and services of the School.

1003263.10 02/03/2012

WHEREFORE, Defendant/Counterclaim Plaintiff Milton Hershey School respectfully requests that the Court enter a Declaratory Judgment ordering, adjudging, and decreeing that:

i.   The School would not be discriminating against Abraham Smith on the basis of his disability, in violation of the ADA or the FHA, by discontinuing the processing of his application for enrollment its programs; and

ii.  That the School be granted such other and further relief as the Court deems appropriate.

Respectfully submitted,

SAUL EWING LLP

/s/     Michael A. Finio, Esq
Michael A. Finio, Esq.
I.D.# PA38872
Amy C. Foerster, Esquire
I.D. # PA77986
2 North Second Street, 7th Floor
Harrisburg, PA  17101
(717) 257-7573 (Foerster)
(717) 238-7671 (Finio)
afoerster@saul.com
mfinio@saul.com

Robert L Duston, Esquire
(admitted Pro Hac Vice)
1919 Pennsylvania Avenue, N.W.
Suite 500
Washington, D.C.  20037

Dated:  February 3, 2012

*Attorneys for Defendant/Counterclaim Plaintiff Milton Hershey School*

-26-

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Answer with Affirmative Defenses to Amended Complaint and Counterclaim for Declaratory Judgment* has been electronically filed and is available to be viewed and downloaded from the Court's Electronic Case Filing system.  I further certify that the following parties were served electronically:

Ronda B. Goldfein
AIDS Law Project of Pennsylvania
1211 Chestnut Street, Suite 600
Philadelphia, PA 19107

*Attorney for Plaintiffs Abraham Smith and Mother Smith*

/s/  Michael A. Finio
Michael A. Finio
Attorney for Plaintiff Milton
Hershey School

1003263.10 02/03/2012