IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MOTHER SMITH, on behalf of herself and  :
as parent and natural guardian on behalf of
ABRAHAM SMITH                              CIVIL ACTION
           Plaintiffs,         :      NO. 11-7391

    v.
                              :
MILTON HERSHEY SCHOOL
           Defendant.

## MEMORANDUM

**JONES, II    J.**                                                                                          June 1, 2012

Before the court is Defendant's Motion to Transfer Venue to the Middle District of Pennsylvania (Dkt. No. 9), and Plaintiffs' Memorandum of Law in Opposition thereto (Dkt. No. 11).  Based upon full consideration of each, as well as all applicable Rules and caselaw, Defendant's Motion to Transfer Venue shall be denied.

    **I.**    **Introduction**

The parties are acutely familiar with the factual background of this case, so the court sets forth only those facts necessary for resolving the instant Motion.  This case involves Defendant Milton Hershey School's ("MHS") decision to discontinue processing the application for enrollment of Plaintiff Abraham Smith.[1]  According to MHS's Motion to Transfer to the Middle

---

[1] On November 30, 2011, Plaintiffs filed the instant action against MHS alleging that MHS's refusal to admit Abraham Smith is in Violation of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §12181, *et seq.* and applicable state law.  On December 5, 2011, this Court granted Plaintiffs' Motion to Proceed Under Pseudonyms due to the HIV positive condition of the minor Plaintiff.  On January 20, 2012, Plaintiffs filed a First Amended

District of Pennsylvania ("Motion to Transfer"), MHS received Abraham Smith's application and supporting information over the course of March and April 2011. In June 2011, MHS decided that the processing of said application would be discontinued on the basis that MHS is "unable to meet his needs in [MHS's] residential setting." Mot. Transfer 3. According to MHS, the decision to discontinue processing Abraham Smith's application was a "collaborative decision involving key senior administrative personnel, with input from others, including medical personnel. All of these people, and other staff with knowledge of relevant facts, reside in or near Hershey, Pennsylvania." Mot. Transfer 3-4.

MHS argues that the Eastern District of Pennsylvania's ("Eastern District") "only connection" with this action is that Plaintiffs reside here, and that Abraham Smith's doctors are located at Children's Hospital of Philadelphia ("CHOP"). Mot. Transfer 2. Moreover, MHS asserts that "[t]here are no other material or substantive connections to the Eastern District[,]" as "[a]ll operative facts occurred in, and all key witnesses reside in the Middle District of Pennsylvania (Middle District)[,]" and "while venue may be proper in the Eastern District, it is not <u>convenient or efficient</u>." *Id*. at 2 (emphasis in original).

In their Memorandum of Law in Opposition to Defendant's Motion to Transfer Venue to the Middle District of Pennsylvania ("Memo in Opposition"), Plaintiffs have gone to great lengths to rebut the bases for inconvenience put forth by Defendant, including discussions regarding: the financial net worth of the respective parties; the travel distances involved in maintaining suit in the Eastern District; the location of Plaintiffs; the locations of Plaintiffs' known witnesses; and the speculative nature of other possible witnesses in the case.

---

Complaint in the Eastern District of Pennsylvania.

In sum, Plaintiffs assert that MHS "fails to meet its heavy burden necessary to overcome the substantial weight afforded to a plaintiffs' [sic] choice of forum, especially, as here, where Plaintiffs reside in the forum and the proposed transfer forum is less than one hundred miles away.  MHS's request would simply shift the inconvenience of a two hour commute from the School to Abraham and his mother, a low-income family represented by a nonprofit public-interest law firm.  In contrast, MHS has close to $8 billion in assets and approximately two thousand employees and volunteers.  There is no question that MHS is in a better position to bear any inconvenience associated with the commute." Mem. Opp'n 2.

## II.     Legal Standard

Inasmuch as Defendant concedes that venue would be proper in either the Middle District of Pennsylvania or the Eastern District of Pennsylvania, 28 U.S.C. § 1404(a) controls the instant Motion:

> § 1404.  Change of venue
>
>> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

"Section 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum." *Lafferty v. Gito St. Riel*, 495 F.3d 72, 76 (3d Cir. Pa. 2007).  In exercising this discretion, the court must remain mindful that . . .

>> "The burden of establishing the need for transfer . . . rests with the movant." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Courts consider a

> variety of factors in determining the proper forum, and "[w]hile there is no definitive formula or list of the factors to consider . . . courts have considered many variants of the private and public interests protected by the language of § 1404(a)." *Id.*  Still, "[w]hether to transfer a case is generally committed to the discretion of the district courts." *In re United States*, 273 F.3d 380, 387 (3d Cir. 1995).  Of course, "a plaintiff's choice of proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . 'should not be lightly disturbed.'" *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quoting *Ungrund v. Cunningham Brothers, Inc.*, 300 F.Supp. 270, 272 (S.D. Ill. 1969)).  Thus, "'a transfer should not be liberally granted.'" *Id.* (quoting *Handlos v. Litton Industries, Inc.*, 304 F.Supp. 347, 352 (E.D. Wis. 1969)).  As such, "'unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.'" *Id.* (quoting *Owatonna Manufacturing Company v. Melroe Company*, 301 F.Supp. 1296, 1307 (D. Minn. 1969)).

*Wilkinson v. Progressive Ins*. Co., No. 10-CV-1760, 2011 U.S. Dist. LEXIS 14063, at *3-4 (M.D. Pa. Feb. 14, 2011).  *See also, Reassure Am. Life Ins. Co. v. Midwest Res., Ltd.,* 721 F. Supp. 2d 346, 352 (E.D. Pa. 2010) ("The defendant bears the burden of proving that venue is proper in the transferee district and that convenience and justice would be served by transferring the action to another district. '[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.'") (internal citation omitted); *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharms. LP*, No. 08-CV-4786, 2009 U.S. Dist. LEXIS 75257, at *9  (E.D. Pa. Aug. 24, 2009) ("There is nothing … in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue." (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 633-34 (1964))).

The private and public factors to be considered by the court in assessing a request to transfer venue on the basis of convenience, include:

> [T]he plaintiff's forum preferences; Defendant's preferences; whether the claim

> arose elsewhere; the convenience of the parties as indicated by their relative physical and financial conditions; the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records . . . [e]nforceability of judgment; practical considerations that could make the trial easy, expeditious or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of trial judges with the state law for diversity cases.

*Aamco Transmission Inc. v. Johnson*, 641 F. Supp. 2d 464, 466 (E.D. Pa. 2009) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).  *See also Falu-Rodriguez v. Democracia USA, Inc.,* No. 10-CV-3811, 2011 U.S. Dist. LEXIS 833, at *4-5 (E.D. Pa. Jan. 4, 2011) (noting the factors discussed in *Jumura*, and highlighting the need to assess "the convenience of the parties as indicated by their relative physical and financial condition," as well as "the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).").

### III.  Discussion

As mentioned above, Defendant does not dispute the fact that under 28 U.S.C. § 1391, venue is proper in the Eastern District, as well as the Middle District. *See* Answer to Compl. ¶ 6; Mot. Transfer 2 n.1.  Therefore, this Court shall assess the remaining issues pertaining to convenience, as presented by both sides.

In support of its Motion to Transfer, MHS raises the following topics as bases in support of its Motion: (1) the potential need for a site visit; (2) disruption of school operations for travel to the Eastern District; (3) the fact that many key witnesses are located in the Middle District; (4) the fact that operative events occurred in the Middle District; and (5) the practical timing of the

transfer request.

MHS posits that in this particular case, "'convenience' takes on a new dimension, because the School is not only a unique <u>residential</u> elementary and secondary learning institution - it is also a unique <u>community</u>." Mot. Transfer 5 (emphasis in original). MHS further states that "[t]he school educates and cares for, and essentially <u>parents</u>, 1,850 students, all of whom live, generally in groups of 10 to12, in homes in which a married couple acts as 'houseparents.'" *Id.* at 5 (emphasis in original). Moreover, MHS argues: "These people need to be <u>at</u> the School, or, as near the School as possible, essentially 24/7. This is virtually impossible when the School can be anywhere from 2 to any number of hours from the federal courthouse in Philadelphia, depending on traffic. By contrast, the School is 20 minutes from the federal courthouse in Harrisburg." Mot. Transfer 7 (emphasis in original).

Taking these concerns and Defendant's choice of Harrisburg, Pennsylvania as its preferred forum into consideration, this Court remains mindful of the deference due to Plaintiffs' choice of forum. Plaintiffs herein reside in Delaware County, Pennsylvania which is situate within the Eastern District, where the instant suit was filed. *See Kielczynski v. Consolidated Rail Corp.,* 837 F. Supp. 687, 689 (E.D. Pa. 1993) ("A court should not lightly disturb plaintiffs' choice of forum and should hold defendants to establishing a strong preponderance in favor of transfer.").

With regard to the parties' relative physical and financial conditions, Defendant would clearly be less physically and financially strained by litigating this case in the Eastern District, than Plaintiffs would be by doing so in the Middle District. Abraham Smith is a thirteen year-old minor from a low-income family, who attends school on weekdays. Arrangements for him

and/or his mother to travel to the Middle District and be present at proceedings related to this case would impose undue hardship upon both individuals. Defendant contends that litigation of this matter in the Eastern District would cause such a profound interruption of the school's operations, that prejudice would result. However, this Court is cannot fathom how a long standing institution of Defendant's size and stature would be unable to function, merely because a few of its numerous employees might have to appear - one at a time - to provide deposition testimony and *possibly* to testify at a trial. Moreover, Plaintiffs correctly note that "[w]hile MHS is a well-resourced institution with close to eight billion dollars in assets, Plaintiffs are low-income individuals represented *pro bono* by their non-profit law firm." *See* Goldfein Decl. ¶¶ 2-3. Defendant simply has not met its burden regarding this particular factor. *See Falu-Rodriguez*, 2011 U.S. Dist. LEXIS 833, at *4-5 (E.D. Pa. Jan. 4, 2011) (reiterating the need to assess "the convenience of the parties as indicated by their relative physical and financial condition[.]")

Next, there is no question that the claim involved herein arose due to actions taken or withheld within the Middle District of Pennsylvania, and this one factor tilts the scale slightly in Defendant's favor. *See Reed v. Weeks Marine, Inc.,* 166 F. Supp. 2d 1052, 1057 (E.D. Pa. 2001) (noting that a plaintiff's choice of forum is given less weight when it is not "the situs of the occurrence upon which the suit is based."). However, when next assessing the relative ease of access to sources of proof (but only to the extent that the proof could not be produced in one of the fora**)**, one can only conclude that the various "potential" witnesses and evidence are located in each District. The two Districts are only an hour and a half to two hours apart. With specific regard to witnesses, Plaintiffs correctly maintain that this particular determination necessarily involves an assessment of which party is in a better position to bear the burden of a potentially

longer commute.  This Court notes that many jurors who are called to serve in the Eastern District oftentimes endure up to an hour and a half commute to the courthouse.  A random online search by this Court of Amtrak's schedule for commuting from the Harrisburg train station to the 30th Street station in Philadelphia on a weekday morning during rush hour reflects a one hour and thirty-five minute commute time.  If ultimately deemed necessary, this Court would be more than willing to accommodate commuting witnesses by allowing the presentation of their testimony to begin after 10:00 a.m. and to conclude early enough to return to Harrisburg at a convenient time towards the end of the workday.  *See Solomon v. Continental American Life Ins. Co.*, 472 F.2d 1043, 1048 (3d Cir. 1973) (noting that it is within the court's discretion to condition its ruling regarding a transfer of venue upon "appropriate safeguards in the interests of justice.").  Defendant maintains that it would be more "convenient" for the trial to take place in the Middle District, but in doing so, fails to identify the specific witnesses who will be inconvenienced, fails to provide the nature of their intended testimony, and fails to indicate that said witnesses would be unable to appear in the Eastern District.  *See Austin v. Johns-Manville Corp.*, 524 F. Supp. 1166, 1169 (E.D. Pa. 1981) (recognizing that "the party seeking the [1404(a)] transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.  The emphasis must be on this showing rather than on numbers.  One key witness may outweigh a great number of less important witnesses.  If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be[,] the application for transfer will be denied.") (citations omitted).  Therefore, this Court is unable to conclude that the potential inconvenience to Defendant and its possible witnesses in having to travel to the Eastern District, outweighs that of Plaintiffs and

their potential witnesses in having to travel to the Middle District.

With respect to Defendant's argument that a site visit will be necessary, this Court is similarly unable to conclude - based upon Defendant's Answer to the Amended Complaint and probable defense - that a site visit would necessarily assist the jury in its assessment of Defendant's decision regarding admission of Abraham Smith to the school.[2]

Turning now to the public factors, Defendant - essentially by omission - has not met its burden of establishing: judgment would not be equally enforceable in either District; practical considerations would make trial in the Middle District easier, more expeditious or less expensive for all of those involved; or that an administrative difficulty exists in this District resulting from court congestion.[3]  With regard to the preference towards deciding local controversies at home, these allegedly injured Plaintiffs are residents of this District, and this District strives to protect its own through utilization of its court system.  *See Superior Precast, Inc. v. Safeco Ins. Co. of*

---

[2] MHS made its decision to deny admission to Abraham Smith based solely upon the records that were sent to them and "the direct threat" they believed "he would pose to students living in unique familial proximity to each other, students who cannot be supervised by an adult 24 hours per day." Mot. Transfer 7.  The fact-finder should be able to assess those same records in conjunction with pertinent law, while taking into consideration the thought processes of the decision-makers at MHS, as elicited through discovery evidence and trial testimony.  Moreover, inasmuch as the student body at MHS consists of more than 1,800 students who are divided into groups of ten to twelve and live in "family-style residences" overseen by married couples called "houseparents," a site visit to one of more than 180 different residences would most likely ultimately be deemed non-probative of the issue at bar.

[3] Instead, in a conclusory fashion, Defendant states "[b]ecause *nearly every* witness resides in the Middle District, transferring this case will help expedite this action, and be far less expensive." Mot. Transfer 8 (emphasis in original).  Although Defendant does additionally contend that the "practical timing" of its transfer request "could make the trial easy, expeditious, or inexpensive," this contention is based upon nothing more than pure speculation and does absolutely nothing to compel a finding that litigation in the Middle District is administratively preferable to litigation in the Eastern District.

*Am.,* 71 F. Supp. 2d 438, 448 (E.D. Pa. 1999) (finding "[t]here is a strong local interest in this case remaining in this district, since a resident of the district allegedly was injured and seeks a judicial remedy for that injury; this district has a strong interest in protecting its residents and providing a forum for resolution of that dispute."); *Inaganti v. Columbia Props. Harrisburg LLC,* No. 10-CV-1651, 2010 U.S. Dist. LEXIS 59166, at *7-8 (E.D. Pa. June 14, 2010) (finding that "the operative facts giving rise to Plaintiffs' injuries and claims against Defendants occurred at Defendants' hotel in Harrisburg, Pennsylvania - situated in the Middle District of Pennsylvania. Although this fact decreases the deference given to Plaintiffs' choice of forum, the [c]ourt notes that Plaintiffs are both residents of Harleysville, Pennsylvania and filed suit in the Philadelphia Court of Common Pleas, with removal occurring to their home forum of the Eastern District of Pennsylvania. As such, this district retains an interest in the parties and the subject matter of this case. Moreover, Defendants' proposed transferee forum is in the same state, meaning that Pennsylvania, regardless of district, has meaningful ties to the controversy. Given that Plaintiffs' choice of venue should generally not be disturbed unless there is no connection between the chosen forum and the lawsuit, the [c]ourt finds this factor to weigh against transfer."). Additionally, as Plaintiffs herein accurately point out, the issue involved in this case is not uniquely or necessarily tied solely to MHS or the Middle District of Pennsylvania but instead is relevant to the lives of over one million HIV-infected people nationwide, many of whom are currently in congregate-living settings and are not creating a direct threat to others.  Mot. Opp'n 23.  Accordingly, there is no "local interest" particularly associated with the Middle District.

      Finally, Defendant offers no evidence regarding the public policies of the fora, and the familiarity of this judge or any judge in the Middle District with the state law for diversity cases

is not an issue in this case.

### V.	Conclusion

Based upon a thorough and careful analysis of the requisite legal factors, this Court finds that Defendant has failed to carry its burden of proving that the interests of justice would be better served by a transfer to the Middle District.  Accordingly, the Defendant's Motion to Transfer Venue to the Middle District of Pennsylvania shall be denied.

An appropriate Order follows.

BY THE COURT:


/s/ C. Darnell Jones, II
_____
C. Darnell Jones, II     J.